# Capehart et al. *v.* Granite Mills.

*Action Against Common Carrier for Failure to Deliver Goods.*

1. *When appeal returnable.*—Although an appeal bond filed during the session of the Supreme Court recites that the appeal is taken to

[Capehart et al. v. Granite Mills.]

the next term of the court, it is no ground for dismissing the appeal, since the law fixes the return day.

2. *Motions not properly before the court will not be considered.*—A paper enclosed in the transcript purporting to be a motion to dismiss the appeal but not marked "filed," nor entered on the motion docket, will not be considered by the appellate court.

3. *Altered paper admissible in connection with explanatory evidence.*—In an action against a common carrier for non-delivery of goods by the assignee of a bill of lading, in which alterations appear to have been made, after the witness who signed the instrument has testified that he did not recollect making the alterations, and to the resemblance of the ink in which they were made to that of parts of the writing which were made by him, it is proper to allow the paper to be offered in evidence before the jury.

4. *Authority of agent to sign bill of lading* —Where the evidence shows that the owners of a line of boats authorized an agent to execute bill of lading in their name at a place distant several miles from the river, for the convenience of shippers, a bill executed by such agent is admissible in evidence as the act of the carrier.

5. *Proof of indorsement necessary when not alleged in complaint.*—In an action by an assignee of a bill of lading against the carrier for failure to deliver the goods which the complaint alleges are the property of plaintiff, but does not allege that such bill has been indorsed to the plaintiff, it is error to allow the introduction of the paper without proof of the indorsement.

6. *Proof of delivery of goods to carrier.*—Where an agent was authorized to sign bills of lading for a carrier by river at a point several miles distant therefrom, but with the express limitation known to the agent and the shipper that no liability was fastened on the carrier until the goods were delivered to it at the river, it is error to charge the jury that a bill of lading for goods signed by such agent made out a *prima facie* case of liability against the carrier in favor of such shipper or his assignee affected with notice of the limited authority of the agent.

7. *Charge assuming absence of evidence, improper.*—A charge assuming the absence of testimony on a point about which there is a conflict in the evidence, is improper.

8. *Measure of damages for non-delivery of goods.*—The measure of damages for the non-delivery of goods by a common carrier, is the cost of the same at the place of destination, less cost of carriage, with interest added.

APPEAL from Marshall Circuit Court.

Tried before Hon. JOHN B. TALLEY.

Action by the Granite Mills against defendants doing business under the name of the Decatur and Chattanooga Packet Company, for failure to deliver eight bales of cotton received by them of Crapon & Co., for which a bill of lading was issued to the latter. When plaintiff offered the bill of lading in evidence, defendants made objections in substance as follows: Because its execution in its present shape, was not proven; because material alterations appeared on its face which were not explained; because not executed in name of principal by the agent; because plaintiff had no interest in the cotton; because the indorsement was in blank and in-

[Capehart et al. v. Granite Mills.]

sufficient; because the indorsement was not proven, and exception was taken to the action of the court in overruling these objections. On request of plaintiff, the court gave the following charges: 1, "If the jury believe from the evidence that the witness Halsey, under the instructions and directions from S. C. Capehart, issued to Crapon & Co., a bill of lading for eight bales of cotton, then in the absence of testimony showing that the cotton was not in fact received by defendants, Decatur and Chattanooga Packet Co., they should find that the defendant did receive the cotton, and if they received the cotton and gave bill of lading for eight bales of cotton to be delivered to the order of said Crapon & Co., at Falls River, Mass., and that said Crapon & Co. indorsed the bill of lading and delivered it to the plaintiffs, and that the said cotton has not been delivered at its destination in Falls River, Mass., the plaintiffs are entitled to have a verdict for the value of the cotton at Falls River, Mass., after the lapse of a reasonable time, together with 6 per cent interest to date." 2, "If the jury find from a consideration of all the testimony that on or about January 31st, 1885, the defendants received eight bales of cotton fron Crapon & Co., a bill of lading for said cotton to be delivered to order of said Crapon & Co. at Falls River, Mass., and that Crapon & Co. assigned and delivered said bill of lading to plaintiffs, Granite Mills, and that said cotton was not delivered to said Granite Mills at Falls River, Mass., the said eight bales of cotton, the plaintiffs are entitled to a verdict for the value of the cotton at Falls River with interest thereon from and after the lapse of a reasonable time, after the giving of the bill of lading, and the jury will so find." 3, "If the jury find from the evidence, that the defendants were engaged under the firm name, and style of Decatur and Chattanooga Packet Company, and that S. C. Capehart authorized the witness R. S. Halsey, to receive cotton and issue bills of lading therefor, and that Crapon & Co. delivered to said Halsey eight bales of cotton, and that Halsey delivered to them the bill of lading offered in evidence. And they further find from the evidence, that the said bill of lading was indorsed and delivered to the plaintiffs, the Granite Mills, and that they have called on the various transportations in Falls River, Mass., and that said cotton has not been delivered, then in that event, the defendants would be liable to plaintiffs for the value of the cotton at the place of delivery, together with the interest thereon at the rate of 6 per cent counted from and after the lapse of a reasonable time, after giving the bill of lading."

[Capehart et al. v. Granite Mills.]

The appeal bond and notice of appeal each recited that the appeal was taken to the next term of the Supreme Court.

BROWN & STREET, for appellants, made the following points: That the alteration of the bill of lading discharged the obligor: *Brown v. Jones,* 3 Port. 420; *Davis v. Carlisle,* 6 Ala. 707; *Glover v. Robbins,* 49 Ala. 219; *Toommer v. Rutland,* 57 Ala. 397; That it was inadmissible as evidence: 1 Am. & Eng. Ency. 512; 1 Greenleaf Ev. 564; *Barcliff v. Treece,* 77 Ala. 528; *Fontain v. Gunter,* 31 Ala. 258; *Birdsall v. Russell,* 29 N. Y. 220; that it could be transferred only by endorsement: *Lehman v. Marshall,* 47 Ala. 362; Code § 1178; *Allen v. Maury,* 66 Ala. 10; that the charge of the court on the measure of damages was erroneous. 2 Sedg. on Dam. pp. 355, 356; *Sturgess v. Bissell,* 46 N. Y. 462; *Sherman v. Wells,* 28 Barb. 403; and other authorities.

LUSK & BELL, for appellee, insisted that the delivery of the bill passed the title to the cotton, citing *Allen v. Maury,* 66 Ala. 10; Am. & Eng. Ency. 243; *Shaw v. Mer. Nat. Bank,* 101 U. S. 557; that the bill of lading was evidence of the receipt of the cotton: *L. & N. R. R. v. McGuire,* 79 Ala. 395; on the measure of damages: *E. T. V. & Ga. R. R. v. Johnson,* 75 Ala. 598; *R. R. v. Wood,* 72 Ala. 451; 1 Brick. Dig. p. 524, § 27.

HEAD, J.—We find on the motion docket, in this cause, a motion to dismiss the appeal, which was submitted for decision on the 27th day of January, 1892. The ground of the motion was that the appeal was made returnable to a time not authorized by law. The appeal was taken on the 3rd day of April, 1891, which was during the term of this court. In such case the law fixes the return day to be the first Monday of the term next, after the expiration of twenty days from the date of the appeal. It was not competent for the parties or the clerk to make it returnable otherwise. The fact that they attempted to do so furnishes no ground for dismissing the appeal. Motion overruled.

We find also enclosed in the transcript a paper signed by appellee's counsel purporting to be a motion to dismiss the appeal, on the ground that the transcript was not filed in this court within proper time. The paper is not marked filed, nor is there such a motion on the docket. We will not consider it. The motion to strike the assignment of errors, found in the same paper, is not considered.

[Capehart et al. v. Granite Mills.]

The action is against appellants, as common carriers, for failure to deliver eight bales of cotton alleged to have been received by them from Crapon & Co. at Huntsville, Ala. to be carried to Falls River, Mass., and there delivered to shipper's order for a reward. Several pleas were filed, neither of which amounts to more than the general issue. The principal contentions were whether defendants received the cotton for carriage as alleged, and whether plaintiff has shown any such right to the cotton as enables it to maintain the action. The evidence discloses that defendants were common carriers of goods by river transportation on the Tennessee River. To enable cotton buyers at Huntsville to conveniently obtain money from the banks there, on shipments of cotton, the river landing being ten miles distant, the defendants authorized R. S. Halsey, of Huntsville, to issue bills of lading for them. Halsey and his partner were engaged in the transfer business, and it was understood that they were to deliver the cotton, for which Halsey gave bills of lading, to defendants at Whitesburg, on the Tennessee River, for which hauling they were to receive twenty-five cents per bale out of the 86 cents per hundred pounds, the rate of freight. It was also expressly agreed between Halsey and defendants that the latter should not be responsible for the cotton until it was actually received by them at Whitesburg—that their liability as carriers should not until then begin. Crapon & Co. were cotton buyers at Huntsville, and on the 31st day of January, 1885, Halsey, whose authority to issue bills of lading, as aforesaid, was then in force, issued to them a bill of lading for eight bales of cotton to be carried to Falls River, Mass., and there delivered to their order, with stipulation to notify Granite Mills. This bill was signed "R. S. Halsey, agent D. & C. P. Co." The defendants did business under the name of Decatur & Chattanooga Packet Company. Under the head of "Marks," in the bill of lading, appear the letters O. N. O. with black lines run through them, and immediately thereunder are the letters and character, "O. & O." There was controversy between the parties whether the lines were run through O. N. O. and O. & O. written under those letters, by Halsey, at the time the bill of lading was issued, or subsequently by some other person. The only witness examined in reference to the giving of the bill of lading, or the delivery of the cotton to him thereunder, was Halsey himself, and he had no recollection whatever of the transaction independent of the bill itself. He testified positively, from the handwriting, that it was issued by him. He testi-

fied that the "O. N. O." were written by him, but was of the
opinion that "O. & O." were not, but was not positive. The
weight of the cotton was written in the proper column, by
him, in figures, "4086," which figures appear to be in different
ink from that in which the other written portions of the
document were written, but the same ink in which O. &
O. were written. The bill has endorsed upon it the follow-
ing: "Crapon & Co. per Percy Clark, atty." Clark was a
member of the firm of Crapon & Co. There is evidence
tending to show the bill of lading was delivered to plaintiff.
Plaintiff produced and read it in evidence on the trial. The
defendants interposed numerous objections to its intro-
duction, which we will notice.

1. Although erasures appear in letters "O. N. O." in
the column for marks, there was sufficient explanatory evi-
dence to enable the jury to determine whether there had
been an alteration of the instrument or not after its issu-
ance.

2. There was sufficient evidence of the execution of the
paper by Halsey for and on behalf of defendants to render
it admissible in so far as its execution is concerned.

3. We think the objection that the endorsement of the
bill of lading by Crapon & Co. was not proven, and that
the bill was not admissible in evidence on that account,
was well taken. There was no proof whatever of the exe-
cution of the endorsement. Upon its back appears the
name, "Crapon & Co. per Percy Clark Atty," and it was
shown that Clark was a member of the firm of Crapon
& Co., but there is a total absence of proof that Clark, or
any other member of the firm, made the indorsement. It
will be observed that the action is not founded upon the bill
of lading. It is an action against the defendants as carriers
for failure to deliver the cotton. It is true, in the second
count, the execution of the bill of lading and its effect are
alleged, but there is no allegation that it was endorsed to
plaintiff. The allegation is that "said cotton was its
property and that defendants have failed to deliver the
same." The instrument and its endorsement to plaintiff
not being the foundation of the action, as laid in the com-
plaint, the statute which dispenses with proof of the exe-
cution of instruments, the foundation of suits, unless such
execution is denied by sworn plea, has no application. In
this case the bill of lading arises incidentally, in the evi-
dence. It and its endorsement are the evidence by which
plaintiff proposes to show title to the cotton in itself, and
its consequent right to maintain the suit. In order to pass

[Capehart et al. v. Granite Mills.]

the title by transfer of the bill of lading endorsement was necessary.—*Lehman, Durr & Co. v. Marshall*, 47 Ala. 362; *Allen, Bethune & Co. v. Maury & Co.*, 66 Ala. 10; Code, § 1762. The endorsement written on the bill was not self proving, and the court erred in admitting it in evidence without proof thereof. It was not essential that a special endorsement to plaintiff should have been made by Crapon & Co. If they endorsed it in blank and delivered it to plaintiff as a transferee, plaintiff thereby became authorized to write over the signature special words of transfer to itself; and the plaintiff retaining possession and producing the paper on the trial, will, upon proof of the endorsement, be treated as the owner, to like effect as if the special words of transfer had been written thereon. There is nothing in the other objections to the introduction of the bill of lading.

We are unable to perceive how the testimony of the witnesses Shore and Atchley tending to show by what transportation lines cotton was carried to and delivered at Falls River, and what efforts and inquiries plaintiff made to find the cotton in question, could have done defendants any injury. It is an undisputed fact that defendants never delivered at Falls River, to any one, any such eight bales of cotton as are sued for. They do not claim to have made such a delivery. Their whole contention is that they never received the cotton, and all their evidence tended to proof of that fact.

On the day defendants authorized Halsey to issue bills of lading for them, Capehart the defendant who gave the authority, saw Crapon & Co. and told them "Halsey would issue bills of lading for the Packet Company and would haul the cotton to the river at Whitesburg, but that the Packet Company's liability for cotton so received by him and upon bills of lading so issued by him should not begin until the cotton was delivered to the boat company at Whitesburg." The defendants introduced evidence tending to show that they never received the cotton sued for at Whitesburg or elsewhere; and, as we have said, there is no proof of the existence of such eight bales of cotton or its delivery to any one by Crapon & Co., except the identification of the bill of lading, by the witness, Halsey, as a genuine document issued by him whilst exercising the authority given him by the defendants. What we have stated comprises substantially all the evidence. The circuit court was of opinion, and, in effect, so charged the jury, that the issurance by Halsey under defendants' authority, of the bill of lading produced by plaintiff, made a *prima facie* case of delivery of the cotton

to defendants. In this, we think the court was in error. The general proposition, we apprehend, was not overlooked, that a carrier is not liable for goods until they have been delivered to him—until they have passed into his control and dominion for the purposes of carriage. That is well settled. Was there such a delivery to defendants in the present instance?

Although Halsey was authorized to issue bills of lading, yet the proof shows that the authority was coupled with the express agreement that no responsibility should attach to defendants until the cotton was actually received by them at the river. In other words, that delivery to them, as carriers, should not be considered as effected by the delivery to Halsey, but only by actual delivery to them at the river; and Crapon & Co. were expressly informed of that agreement before they delivered the cotton in question to Halsey and received from him the bill of lading. In all actions against common carriers of goods, the first step in the plaintiff's proof is to show delivery of the goods to the carrier. He makes out no case until that is done. In view of the express limitation placed on Halsey's agency, made known to Crapon & Co., delivery to defendants, fixing liability upon them, could only be accomplished by actual delivery to them at the river. The effect of the arrangement was to constitute Halsey the agent or carrier of Crapon & Co. in respect of the hauling of the cotton to Whitesburg and its delivery there to defendants. It devolved therefore on plaintiff to prove, independently of the bill of lading, that the cotton was actually delivered to defendants. There is no proof that plaintiff was a purchaser for value, of the bill of lading, without notice of the limitation placed upon Halsey's agency. Without proof that plaintiff paid value for the bill, even if the execution of the endorsement had been shown, all defenses open to defendants against Crapon & Co., if they were suing, are available against the plaintiff. Under the principles herein declared, each of the charges 1, 2 and 3, given at the request of plaintiff, was erroneous. Charge 1 is also faulty in that it assumes that there is an absence of evidence showing that the cotton was not in fact received by defendants. The testimony of Capehart and Tyler tended to show the cotton was never in fact received by defendants. Charge 2, is bad, in that it submits to the jury, without evidence, the question of the assignment of the bill of lading to plaintiff. The vices of charge 3 will be readily understood from what we have already said. We remark that each of the charges incorrectly states the measure of dama-

[McGough v. Sweetser.]

ges. The value of the cotton at Falls River, *less cost of carriage*, and interest thereon constitute the true measure.

The judgment of the Circuit Court is reversed and the cause remanded.

Reversed and remanded.